FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUN 28 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
GILBERTO RIVERA,

        Plaintiff,

  - against -

NEW YORK CITY DEPARTMENT OF
CORRECTION, THE CITY OF NEW YORK,
and LIONEL LORQUET,

        Defendants.
----------------------------------------------------------x

**OPINION & ORDER**

No. 06-cv-862 (NG) (JMA)

NINA GERSHON, United States District Judge:

Defendant the City of New York moves under Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing plaintiff's complaint for retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*[1] Plaintiff cannot establish that he had a good faith, reasonable belief that his supervisor's conduct toward plaintiff's secretary constituted sexual harassment in violation of Title VII; therefore, any action taken against him could not have been retaliation for engaging in an activity protected by Title VII. For that reason, defendant's motion is granted.

## BACKGROUND

Except as otherwise indicated, the record established that the following material facts are undisputed.

Plaintiff was employed by the New York City Department of Correction ("DOC") from November 5, 1984 until his retirement on January 17, 2007. In April 2004, plaintiff was serving

---

[1] At the pre-motion conference held on May 18, 2011, defendants Lionel Lorquet and the New York City Department of Correction ("DOC") were dismissed as defendants in this action. *See* Minute Entry, ECF No. 45 (May 18, 2011).

as the Deputy Warden in charge of Security at the Manhattan Detention Complex ("MDC"). Around the same time, Lionel Lorquet was promoted to Warden and assigned to the MDC, becoming plaintiff's direct supervisor. Shortly thereafter, Warden Lorquet reassigned plaintiff to the position of Deputy Warden of Administration. Correction Officer ("CO") Selene Germany then became plaintiff's secretary. According to plaintiff, he selected her for the job despite Warden Lorquet's disapproval.

During the week ending June 4, 2005, Officer Germany told plaintiff that Warden Lorquet visited her office to ask her why she "never called him when he gave her his cell phone a long time ago." Officer Germany told him that she planned to tell Warden Lorquet that she was not going to call him, and plaintiff thought that would resolve the matter. He never discussed it with Warden Lorquet.

On June 20, 2005, Warden Lorquet emailed plaintiff, stating that an inspection of the kitchen area on June 16, 2005, had revealed improper sanitation. He directed plaintiff to explain the situation and detail how he intended to ensure that the area would be properly maintained in the future. Approximately two weeks later, on July 6 or 7, Warden Lorquet conducted a "corrective interview" with plaintiff regarding the sanitation of the kitchen area, observing that it had not been properly sanitized during June. Although plaintiff does not dispute that he received a corrective interview, he contends that the reason for the interview was that Warden Lorquet had received a critical violation for unsanitary conditions in the kitchen, and not that the plaintiff failed to sanitize the area.

On July 13, 2005, Warden Lorquet met with plaintiff and Officer Germany to discuss a "Close of Business" report that had not been submitted on time. During the meeting Warden Lorquet "yelled" at Officer Germany for the tardy report, and "made" Officer Germany cry.

After Officer Germany left the meeting, Warden Lorquet told plaintiff that, if Officer Germany was not capable of performing her job duties, plaintiff should "get rid of her." Plaintiff was surprised by how upset Warden Lorquet seemed to be over this report.

After the meeting, Officer Germany told plaintiff that she attributed Warden Lorquet's anger to her refusal to call him. Plaintiff told Officer Germany, "Now I am sure that he is sexually harassing [you] and I [am] obligated to report this . . . ." According to plaintiff, Officer Germany said she did not object to him filing a complaint; later, and before he filed his complaint, however, she told plaintiff that she had developed reservations, in part because she feared she might get in trouble.[2]

On July 19, 2005, plaintiff submitted a complaint dated July 15, 2005, to DOC's Deputy Commissioner for Equal Employment Opportunity ("EEO") alleging that Warden Lorquet had created a hostile work environment for Officer Germany.[3] In the complaint, plaintiff alleged that Officer Germany told him that Warden Lorquet was assigning her extra work and had admonished her on one occasion because she had rejected the Warden's advances.

On the same day, July 19, 2005, plaintiff was removed from the position of Deputy Warden of Administration and reassigned as Deputy Warden for Inmate Programs, where he was

---

[2] Officer Germany disputes these conversations. At her deposition, she denied complaining to plaintiff about Warden Lorquet; she stated that she never told plaintiff that Warden Lorquet gave her his phone number, and that she never alleged that Warden Lorquet was harassing her. She also denied that she asked plaintiff to file the complaint on her behalf or that she wanted to pursue a sexual harassment complaint against Warden Lorquet.

[3] On some unknown date, Officer Germany had also had an argument with a captain, which plaintiff advised Warden Lorquet that he wanted to investigate. Warden Lorquet told him, "Forget about the investigation, don't even bother." Plaintiff also testified that, once or twice a week, Warden Lorquet would have Officer Germany cover his secretary's desk when the secretary was at lunch. Plaintiff testified that Officer Germany told him that she did not feel "comfortable doing relief in the Warden's office." Although he did not include these facts in his EEO complaint, plaintiff testified at his deposition that this incident was another reason why he believed Warden Lorquet had engaged in harassing conduct.

responsible for inmate assignments, programs, and visits, and employees' social activities. Neither his salary nor benefits changed, and he continued to report to Warden Lorquet, but the plaintiff testified, without providing supportive details, that the new position carried less prestige and responsibility, and offered him a smaller office.

On July 27, 2005, Officer Germany wrote to Warden Lorquet to request a transfer from her position as plaintiff's secretary. Although her memorandum to Warden Lorquet stated only that her request was for personal reasons, she later testified that she did not like working for plaintiff, whom she did not feel was a "proper" supervisor.

Two days later, on July 29, plaintiff received notice that he faced disciplinary proceedings for violating departmental rules arising from an incident on July 20, 2005 (hereinafter, "Command Discipline"). On that day, Warden Lorquet had ordered plaintiff to submit a report regarding problems with a "chiller machine" in the facility. Plaintiff left work before the report was submitted and was ordered to return to work to complete it.

On August 12, 2005, a disciplinary hearing was held regarding the Command Discipline. The next day, following the hearing, plaintiff was issued a corrective interview. At his deposition, plaintiff disputed the facts giving rise to the hearing, but did not dispute that the hearing occurred or that the corrective interview was given.[4]

In late October 2005, plaintiff filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the New York State Department of

---

[4] Plaintiff asserts that the Warden was finalizing the report, which was not ready for plaintiff's signature until after the end of his shift. In plaintiff's view, the corrective interview was issued because the hearing officer, Warden Shaw, felt uncomfortable merely dismissing the charge after it had been issued by another warden.

4

Human Rights ("NYSDHR"). Among other things, he alleged that he had been retaliated against for filing the sexual harassment complaint on behalf of Officer Germany on July 19.[5]

On October 26, 2005, plaintiff was designated as "Chronic Absent" because he reported sick on twelve or more work days during a twelve-month period. The designation was based in part on plaintiff's absence for sickness for twenty days during late September and October.

In a memorandum dated November 1, 2005, Warden Lorquet was notified by the DOC EEO office that he was the subject of a sexual harassment complaint, although the memorandum did not provide any details on the complaint or investigation.

On November 18, 2005, plaintiff wrote to Assistant Chief Richard Pagan to appeal his Chronic Absent designation. He asserted that Warden Lorquet improperly calculated his absences both by basing his calculations on a period of more than one year and by using absences related to line-of-duty injuries. He also raised a number of other problems with the designation, including that the forms were not properly signed by Warden Lorquet, who, in addition, failed to counsel plaintiff prior to the designation as required by DOC regulations. He claimed that his Chronic Absent designation was improperly used to deny a contemporaneous request for promotion because such a designation cannot be used during the first 20 days of the designation under DOC regulations.[6]

---

[5] The record contains two charges of discrimination: one filed with the NYSDHR on October 21, 2005, and the other with the EEOC on October 24, 2005. Defendant does not contest plaintiff's assertion that he exhausted his administrative remedies.

[6] The parties dispute whether the appeal was proper because it was not made to plaintiff's commanding officer, Warden Lorquet, as required by DOC regulations, but to Assistant Chief Pagan. Plaintiff contends it was appropriate, given the circumstances. This dispute is not material to the resolution of this motion.

On March 21, 2006, the DOC EEO office found the allegations of sexual harassment against Warden Lorquet were not substantiated and closed its investigation.[7]

Turning to the issue of work performance, it was Warden Lorquet who evaluated plaintiff's work performance in connection with plaintiff's requests for promotion and regular biannual evaluations. In December 2004, Warden Lorquet evaluated plaintiff's performance in connection with his application for promotion to Warden Level III. Plaintiff received an overall rating of "Good" despite receiving "Unsatisfactory" ratings in two subcategories, and Warden Lorquet recommended plaintiff for promotion. Warden Lorquet prepared another performance evaluation for plaintiff, dated July 7, 2005. In this evaluation, plaintiff again received an overall rating of "Good," but also received ratings of "Unsatisfactory" in ten of twenty-four subcategories. The warden did not recommend plaintiff for promotion.

On November 1, 2005, Warden Lorquet again evaluated another promotion request by plaintiff. In the evaluation, plaintiff received "Unsatisfactory" marks in thirteen of twenty-four categories and an overall rating of "Marginal." In comments, Warden Lorquet wrote, "Deputy Warden Rivera needs to change his laissez faire leadership attitude, improve his communication skills with his subordinate and his Supervisor to effectively achieve the Department[']s goal and remove himself from chronic status before I can objectively recommend him for the Warden Level [III] reassignment position."

On December 12, 2005, Warden Lorquet evaluated plaintiff's performance for the period from July to December 2005. Unlike the evaluations previously discussed, which were made in

---

[7] The EEO closing memo contradicts some of Officer Germany's deposition statements. For example, the EEO closing memo states that Officer Germany said Warden Lorquet gave her his personal cell number. However, in her deposition, Officer Germany denied that Warden Lorquet ever gave her his number. The EEO memo states that Officer Germany believed Warden Lorquet "acted harshly towards her because she refused his advances and did not call [him] on his personal cell phone . . . ."

connection with plaintiff's promotion requests, this was DOC's required biannual evaluation. Plaintiff received an overall score of 1.45, which earned him an overall rating of "Unsatisfactory." Although plaintiff does not dispute his overall score, he also contends that the evaluation form used here was improper and that his overall score should have earned him a rating between "Marginal" and "Good."

Plaintiff retired from the DOC effective January 17, 2007.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where the "movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the facts in the light most favorable to the non-moving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotations and emphasis removed).

## B. Retaliation[8]

Title VII prohibits an employer from retaliating against an employee for, among other things, complaining of employment discrimination prohibited by Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Retaliation claims under Title VII are governed by the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Summa v. Hofstra University*, 708 F.3d 115, 125 (2d Cir. 2013). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) his employer was aware of that activity; (3) the employer took a materially adverse action; and (4) a causal connection exists between the adverse action and the protected activity. *See Kelly v. Howard I. Shapiro & Assoc. Consulting Engs., P.C.*, 716 F. 3d 10, 14 (2d Cir. 2013). Under a recent decision of the Supreme Court, in making out the causal connection, a plaintiff must show that the desire to retaliate was not just a motivating factor, but was the "but-for" cause of the challenged employment action.

---

[8] To the extent that the Amended Complaint raises a claim of retaliation under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, *see* Am. Compl. ¶¶ 17-18, or a claim under the Fourteenth Amendment to the U.S. Constitution, Am. Compl. ¶ 1, those claims are deemed to be abandoned. Other than passing references to the NYSHRL in the section of his brief entitled "Legal Standard for a Retaliation Claim Under Title VII," plaintiff has failed to provide any argument in opposition to the motion for summary judgment on these claims. *See Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 208 n.108 (S.D.N.Y. 2009); *cf. Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 363 n.9 (2d Cir. 2004) (claims abandoned when party provides no argument against them on appeal). In any event, plaintiff's state law claim meets the same end under the analysis discussed above. In addition, despite a reference in the same passage in the brief to the New York City Human Rights Law, the Amended Complaint makes no claims under this provision, and plaintiff's brief makes no argument regarding this law.

*University of Texas Southwestern Medical v. Nassar*, ___ U.S. ___, ___, 2013 WL 3155234, *10 (June 24, 2013). Here, plaintiff cannot make out a *prima facie* case.

### a. Engaged in Protected Activity

To establish the first element of his *prima facie* retaliation claim, a plaintiff need only prove that his complaint "was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful," not that the underlying complaint of discrimination had merit. *Rivera v. Rochester Genesee Regional Transp. Authority*, 702 F.3d 685, 698 (2d Cir. 2012) (internal quotation marks omitted). The plaintiff must have a good faith, reasonable belief that the employment practice at issue was made unlawful by Title VII. *Kelly*, 716 F.3d at 14.

Mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by objective good faith. *Id.* at 16; *see also Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person in light of the totality of the circumstances. *Kelly*, 716 F.3d at 14, 17.

At issue here is whether plaintiff had a reasonable, good faith belief that Warden Lorquet had sexually harassed Officer Germany when plaintiff filed his complaint with the DOC EEO on July 19.[9] Sexual harassment claims are made out under two theories: (1) hostile work environment, and (2) *quid pro quo* harassment. *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994).

---

[9] Although the force of plaintiff's argument is directed at retaliation stemming from the July 19 complaint to the DOC EEO, plaintiff suggests in his brief that the protected activity is based on his October filing with the U.S. EEOC. Whether retaliation stemmed from one particular complaint, or both, is not material to whether he had a good faith, reasonable belief that Warden Lorquet engaged in an unlawful employment action.

9

### i. Hostile Work Environment

To make out a *prima facie* case of hostile work environment, a plaintiff must show: (1) that the harassment was so sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer. *See Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (internal quotation marks omitted). Isolated incidents usually will not suffice to establish a hostile work environment, although a single episode of harassment might establish a hostile work environment if the incident is sufficiently "severe." *Redd v. New York Div. of Parole*, 678 F.3d 166, 175-76 (2d Cir. 2012).

Numerous cases demonstrate that the facts alleged here would not constitute a claim for hostile work environment. In *Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001), for example, the plaintiff was subject to an offensive comment in a meeting involving a review of psychological evaluations for four job applicants. *Id.* at 269.

> The report for one of the applicants disclosed that the applicant had once commented to a co-worker, "I hear making love to you is like making love to the Grand Canyon." At the meeting [plaintiff's] supervisor read the comment aloud, looked at [plaintiff] and stated, "I don't know what that means." The other employee then said, "Well, I'll tell you later," and both men chuckled.

*Id.* (internal citations omitted). Plaintiff complained about the comment to the offending employee's supervisor, and this complaint was the basis of her retaliation claim. *Id.* at 269-70. In holding that no reasonable person could have believed that this single incident made the plaintiff's work environment sufficiently hostile or abusive as to constitute discrimination under Title VII, the Supreme Court observed that sexual harassment is actionable under Title VII "only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 270-71 (internal quotation marks omitted). "Workplace

10

conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 270-71 (internal quotation marks omitted).

In a recent discussion of these principles, the Second Circuit noted that "[t]he line between complaints that are easily susceptible to dismissal as a matter of law and those that are not is indistinct." *Redd*, 378 F. 3d at 177. "On one side lie complaints of sexual assaults, other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; and obscene language or gestures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse, or boorish workers." *Id.* (internal quotations and editing marks omitted).

Although the line between such complaints may often be indistinct, cases applying these principles have dismissed claims asserting facts that would establish a far more severe or pervasively abusive working environment than those presented here. *See, e.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 386-87 (S.D.N.Y. 2001); *Gregg v. New York State Dep't of Taxation & Finance*, 1999 U.S. Dist. LEXIS 5415, *36-37 (S.D.N.Y. 1999).

Plaintiff's EEO complaint stated that Warden Lorquet had engaged in hostile work environment harassment arising from two incidents, the conversation around June 4, 2005, when Warden Lorquet had stopped by Officer Germany's workspace to ask her why she had not called him, and the July 13 meeting, where Warden Lorquet "yelled" at Officer Germany for a tardy

report and suggested to plaintiff outside of her presence that he fire her if she could not perform the job. Neither of these incidents, separated by roughly six weeks, involved *any* physical contact or threatening behavior, overt sexual comments or innuendo, vulgar banter, repeated offensive comments or invitations, or interference with Officer Germany's work performance. *See Kelly*, 716 F.3d at 15-16; *cf. Redd*, 678 F.3d at 177 ("*Casual contact* that might be expected among friends—a hand on the shoulder, a brief hug, or a peck on the cheek—would normally be unlikely to create a hostile environment *in the absence of aggravating circumstances such as continued contact after an objection* . . . ." (quoting *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006) (emphasis added in *Redd*)). These incidents, whether considered separately or cumulatively, were objectively not so severe or pervasive as to alter the conditions of Officer Germany's employment and create an abusive working environment for her. No reasonable jury could find otherwise.

### ii. *Quid Pro Quo* Harassment

"When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quotations omitted). To make out a *prima facie* case of *quid pro quo* sexual harassment, an employee must show a tangible employment action, *i.e.*, that an explicit alteration in the terms or conditions of employment resulted from refusal to submit to a supervisor's sexual advances. *Schiano*, 445 F.3d at 604. A tangible employment action usually "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quotations omitted).

The facts here do not support a *quid pro quo* theory of discrimination. Plaintiff's EEO complaint does not allege any facts showing that Officer Germany suffered any tangible employment action, and nothing else in the record so much as hints that Officer Germany suffered any tangible employment activity.[10] *See id.*

### b. Plaintiff Had No Reasonable, Good Faith Belief

As noted above, that an underlying employment discrimination claim lacks merit is not necessarily fatal to a claim of retaliation. *See Rivera*, 702 F.3d at 698. What matters is whether plaintiff had a good faith, reasonable belief that the conduct violated Title VII.

Plaintiff cannot establish that it was objectively reasonable to believe that Warden Lorquet's conduct was sufficiently severe or pervasive as to alter the conditions of Officer Germany's work environment. It bears repeating that the incidents here did not involve physical contact or threats, overt sexual comments or innuendo, repeated offensive comments or invitations, vulgar banter, and they did not affect Officer Germany's work performance. Furthermore, six weeks passed between the two incidents. No reasonable person could have concluded on the evidence plaintiff proffers that the conduct created an abusive work environment for Officer Germany based on her sex. *See Clark County*, 532 U.S. at 271; *cf. Summa*, 708 F.3d at 127. With respect to *quid pro quo* harassment, no reasonable person could have believed that Officer Germany had suffered a tangible employment action; indeed,

---

[10] Plaintiff refers to a third conversation in which Warden Lorquet attempted to discourage plaintiff from investigating an argument that Officer Germany had with a captain whose name is not identified in the record. Setting aside that plaintiff cannot establish when this event took place, nothing in these facts suggests, as plaintiff contends, that this interaction would contribute to a *quid pro quo* claim. *See Schiano*, 445 F.3d at 604 (*quid pro quo* claim requires showing of a tangible employment action.).

13

plaintiff's failure to describe facts that would support such a claim on the EEO complaint suggest that he did not even subjectively believe that Officer Germany was subject to *quid pro quo* harassment. And plaintiff cites no cases that would support his argument that this type of conduct approaches sexual harassment under Title VII. While the burden of establishing the first element of a *prima facie* case of retaliation may not be a heavy one, *see Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002), the record here is simply too thin to withstand summary judgment.

Plaintiff argues that he could not, as a layperson, have known that the acts he observed were insufficient to establish a hostile work environment, especially since the conduct may have violated DOC's internal policies. This argument is rejected. The Second Circuit recently rejected a similar argument in *Kelly v. Shapiro*, 716 F. 3d 10, 16-17 (2d Cir. 2013). In *Kelly*, the Court held that a non-lawyer's lack of knowledge of the "intricacies of our Title VII jurisprudence" could not defeat the requirement that plaintiff have a good faith, reasonable belief that the conduct violated Title VII. *Id. See also Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999); *Fattoruso v. Hilton Grand Vacations Co, LLC*, 873 F. Supp. 2d 569, 581 (S.D.N.Y. 2012) ("[A] violation of [a company's] internal policy does not ergo amount to a violation of federal, state, or local law.") (analyzing New York City Human Rights Law, N.Y.C. Admin. Code. § 8–107(7)), *aff'd on other grounds* 2013 WL 2123088 (2d Cir. 2013). Plaintiff proffers the deposition testimony of Louis Burgos, Jr., DOC's Deputy Commissioner for Equal Employment Opportunity, who stated that, assuming there was evidence that Warden Lorquet gave Officer Germany his cell phone number, such an act would have violated DOC's internal "zero tolerance" EEO policy. This evidence, however, demonstrates only that plaintiff had a good faith, reasonable belief that Warden Lorquet had violated DOC's policy; it does not

establish that plaintiff reasonably believed there was a violation of federal law, which is what his federal retaliation claim requires.

Finally, plaintiff's argument that the good-faith requirement applies only to informal complaints is rejected. The good-faith requirement applies to all complaints, whether formal or informal, that an unlawful employment activity has occurred. *See Kessler v. Westchester County Dep't. of Social Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (complaint made to EEOC and NYSDHR made with good faith, reasonable belief that an unlawful employment activity had occurred); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1179-80 (2d Cir. 1996) (plaintiff's informal complaint about co-worker's conduct to personal friend and vice president of company made with good faith, reasonable belief that an employment activity had occurred).

Because no reasonable juror could find that plaintiff could have reasonably believed in good faith that Warden Lorquet's conduct violated Title VII, defendant is entitled to summary judgment. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998) ("Summary judgment applies no less to Title VII cases than to commercial cases or other areas of litigation, . . . and plaintiff must still offer concrete evidence from which a reasonable juror could return a verdict in [his] favor." (internal citations and quotation marks omitted)).

## C. Defendant's Remaining Arguments

Defendants also move for summary judgment on the grounds that plaintiff cannot establish the third or fourth elements of his retaliation claim. Those arguments need not be addressed here because defendant's motion for summary judgment is granted for the reasons discussed above.

## CONCLUSION

For the reasons discussed above, the motion of the defendant City of New York for summary judgment is granted. The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

s/Nina Gershon

**NINA GERSHON**
**United States District Judge**

Dated: June 28, 2013
Brooklyn, New York